# STATE v. INGVALD ALMOS.[1]

July 18, 1913.

Nos. 18,177—(14).

**Fair trial in criminal case.**

1. It is proper for the court, in its charge in a criminal case, to review the evidence and to state clearly the claims of the respective parties, but it is not the province of the court to indulge in argument, and, if a charge is argumentative, emphasizing testimony favorable to the state, explaining away discrepancies in the state's case and discrediting the case and the testimony of the defendant, the defendant is not given such a trial as is guaranteed by the Constitution and laws of the state.

**Reversal of verdict.**

2. Verdicts should not be reversed for errors in the charge which, though wrong in form, are wanting in substance, but if such error tends to prejudice the substantial rights of the defendant on the merits, a new trial should be granted.

Defendant was indicted by the grand jury of Polk county for the crime of grand larceny in the first degree, was tried in the district court for that county before Watts, J., and a jury which found defendant guilty as charged in the indictment. From an order denying defendant's motion for a new trial, he appealed. Reversed.

*William P. Murphy* and *Ole J. Vaule,* for appellant.

*Lyndon A. Smith,* Attorney General, *Alonzo J. Edgerton,* Assistant Attorney General, and *E. O. Hagen,* County Attorney, for respondent.

[1]Reported in 142 N. W. 801.

HALLAM, J.

Defendant was convicted of the crime of grand larceny in the first degree, on the charge of having stolen $5.75 from the person of one Rudolph Zeiske. Defendant is 23 years old, was brought up on a farm in Norway and had been in this country two and one-half years. Since coming here he has worked on farms and in the woods. On October 10, 1912, he came to East Grand Forks with one Nelson, and for three days spent most of his time about the saloons. It is conceded that on the evening of Saturday, October 12, after closing time, and at about 11:20 p. m. he came to Engen's saloon, where he had a room, and asked for Nelson; that the bartender told him that Nelson had gone out; that Nelson was pretty drunk, and that defendant had better take care of him; that defendant then went out, for the purpose, as he claims, of looking for Nelson.

Some time later, and about 12:30 a. m. a police officer came upon defendant and Zeiske in an alley. They were talking together. Zeiske was leaning against a building and defendant was standing about ten feet away. Defendant claimed he heard Zeiske groaning in the alley and went to see what was the matter. The officer asked defendant if he was looking for a place to sleep. Defendant said no, he had a room. The officer then told him he had better get to it and go to bed. Defendant started away, but the officer found Zeiske too drunk to walk, so he called defendant back. When called, defendant started to run. The officer told defendant he would shoot if defendant did not stop. Defendant then stopped and came back and, with the officer, helped Zeiske to the station. Either on the way to the station or after they got there, Zeiske said he had been robbed; that he did not know who robbed him. At the preliminary examination, October 15, he testified that defendant robbed him of $10. On the trial in the district court he said he was robbed of $20. Defendant, when arrested had $5.75 on his person. Zeiske was bruised about the face, his face and clothing were smeared with blood, evidently from his nose. It was dry and had evidently been there an hour or two when the officer found him. If defendant committed the act, he had evidently left Zeiske and come back again. Zeiske claimed he and defendant had both been in Engen's saloon

during the evening; that he was playing a slot machine and whenever he won on the machine he would buy a drink; that defendant drank with him several times; that they were there up to closing time, 11 o'clock; that he then bought a bottle of whisky and went out; that all the men in the saloon went out together; that defendant came behind him and took him by the shoulder and shoved him a couple of blocks, most of the way through a brightly lighted street, then into a dark alley, where he robbed him of his money and took the bottle of whisky from him, and when Zeiske "hollered," defendant hit him and knocked him down. The bartender in Engen's saloon said the two left the saloon together about 9 o'clock. Defendant had a bottle of whisky in his pocket when the officer found him. Some of the money in defendant's pocket was bloody, but he explained this by saying that he had an abrasion on his hand from another cause. No witness was produced who saw Zeiske assaulted or robbed. Defendant denied absolutely that he committed the larceny. He testified that he did not remember seeing Zeiske in Engen's saloon, but that he saw a number of people there and some one was playing the slot machine. He said that he had several drinks there but no one bought drinks with chips.

We recite these facts somewhat at length to indicate that the evidence was conflicting and by no means conclusive of guilt.

1. The error complained of is in the charge of the court. It is contended that the charge was argumentative and unfair to the defendant and that it prejudiced his case before the jury. The objections complained of are mainly the following:

That the court commenced his charge by stating that, according to the testimony on the part of the state, the defendant might as well have been indicted for robbery in the first degree as grand larceny in the first degree, that robbery in the first degree is a much more serious crime; that the court thus left the inference that defendant was fortunate that the charge was larceny and not robbery.

That the court charged the jury that defendant claimed he wasn't in Engen's saloon while Zeiske was playing the slot machine and says Zeiske did not treat him; and charged further, that if they found this evidence of defendant false, they had a right to take

122 M.—31.

into consideration the rule falsus in uno falsus in omnibus, whereas in fact defendant did not testify that he was not in Engen's saloon at the time, but merely that he did not remember Zeiske and that no one bought him drinks with chips, and it is contended that the court, by erroneously stating that defendant in his testimony made these claims, which were in fact false, improperly discredited defendant's testimony.

That the court undertook to explain away discrepancies between the transcript of the testimony of Zeiske, given at the preliminary examination, and his testimony given on the trial, and stated in the charge that Zeiske may have intended to say it as it was, but since the jury had heard his manner of testifying they could judge "how likely it would be that any man hearing him testify * * * would understand what the man intended to say," and "how near he can come to telling what he intends to tell at any time."

That the court undertook to explain the discrepancy between Zeiske's testimony as to his time of leaving Engen's saloon, and that of the bartender, by arguing that "unless one's attention is directed to it particularly, he might very easily be mistaken as to the time" and that they should take this fact into consideration.

That the court undertook to explain away the inconsistency in the claim of the state that the defendant committed this crime, and an hour or two later came back to the scene of the crime, by suggesting that, as to whether defendant came "to see if he was hurt more than he supposed or what his purpose might have been in going, you can determine as well as I. It may have been to see if the man was killed or if he was still there."

Numerous other less important objections are raised.

We are of the opinion that, while any one of these assignments of error would not in itself be sufficient to warrant a reversal, all of them taken together, and taken in connection with the general tone and tenor of the charge, lay the charge open to the objection that it was argumentative and unfair, and that a new trial must be granted.

It is proper for the court in its charge to review the evidence, and to state clearly the claims of the respective parties, but if a charge is argumentative, emphasizing testimony favorable to the

state, explaining away discrepancies in the state's case and discrediting the case and the testimony of the defendant, the defendant is not given such a trial as is guaranteed by the constitution and laws of the state. State v. Yates, 99 Minn. 461, 109 N. W. 1070; State v. Hoy, 83 Minn. 286, 86 N. W. 98.

2. We are not disposed to be captious in review of a charge of a trial court, nor to reverse verdicts for errors in the charge which, though wrong in form, are wanting in substance, and we are not unmindful of the statute which provides that the trial, judgment, or other proceedings, shall not be affected "by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits." R. L. 1905, § 5306. This statute is a salutary one and must be liberally construed. But we are constrained to hold that the errors in the charge in this case do in fact "tend to the prejudice of the substantial rights of the defendant upon the merits." While the evidence is not all before us, enough is here to show that the verdict involved the determination of close questions of fact, and the jury must have been influenced in this determination by the tone of argument that runs through the charge. They could hardly escape the conclusion that defendant's case was discredited by the court.

It is urged that the court in some parts of the charge calls attention to discrepancies in the state's case. We are of the opinion that this does not cure the objection urged by defendant. Only one or two such instances occur, and it is impossible to say that these counteracted the defects complained of.

Order reversed.