## STATE v. WILLIAM J. ANDERSON.

113 N. W. (2d) 4.

January 12, 1962—No. 37,874.

432

Paul H. Ray, for appellant.

Walter F. Mondale, Attorney General, George M. Scott, County Attorney, and Ronald I. Meshbesher and Per M. Larson, Assistant County Attorneys, for respondent.

KNUTSON, JUSTICE.

Defendant was convicted of the crime of burglary in the third degree after a trial by jury on January 30, 1959. He now seeks a review of his conviction in this court. There are many technical deficiencies in his appeal here, but we have concluded to consider the case as an appeal from an order denying a new trial and to dispose of it on its merits.

Doyle's Liquor Store is located at 523 Plymouth Avenue North in Minneapolis. The store was closed about 10:30 p. m. on Saturday, November 15, 1958. Sometime between the closing hour on Saturday and the opening time at 8 a. m. on Monday, November 17, the store was broken into and property and money removed from it. The store was entered by gaining entrance to an apartment located immediately above it and cutting a hole through the ceiling above a storeroom. The safe in the liquor store was opened by "peeling" the front door of the safe off. The sum of $1,085, which included four or five $100 bills, was removed from the safe. About 19 cases of liquor were removed from the storeroom, apparently by hauling it up through the hole cut in the ceiling.

Between 10:30 and 11 o'clock in the evening of Monday, Novem-

ber 17, Mrs. Marjorie Huber, who lives across the street from Doyle's Liquor Store, noticed a car in the alley behind her house and a man running through her yard. Believing that someone might harm her house or her dog, she telephoned the police. The car she had first noticed drove away, but she saw another parked car beneath her window. In this car there were cartons of bottles, which she recognized as liquor bottles. A squad car soon arrived in answer to her telephone call, and the police saw a man darting into the apartment building at 512 Plymouth Avenue. Reinforcements were called for, and an attempt was made to cover the means of ingress to and egress from the building, but whoever ran into the building was not apprehended. In searching the building, officers found apartment No. 2 open, with no one inside. A jacket resembling the one worn by the man who ran into the building was found in the apartment. This apartment had been rented in October by codefendant, Ronald M. Aron, who lived there until November 17.

Various tools and bottles of liquor were found in the apartment. A finger print of one of Doyle's clerks was found on one of the bottles. The tools included crowbars, chisels, a keyhole saw, a sledge hammer, a mallet, a hatchet, a punch, a brace and bit, and a length of rope knotted at intervals in such a manner that it could be used as a ladder. Examination at the state crime laboratory revealed that the sledge hammer found in Aron's apartment was the same instrument that had made an impression on the safe in Doyle's Liquor Store. Paint samples from the safe door were matched with particles on two chisels found in the apartment and were found to be of the same nature. A sack of liquor bottles was found in the hallway in the apartment building.

The car parked in back of the apartment building was a 1957 Buick with Illinois license plates registered in the name of defendant Anderson. It contained four cartons of sealed whiskey bottles, one of which cartons was identified through a serial and code number as having come from Doyle's Liquor Store. Various other tools were found in the car.

Two days after the above incidents, that is, Wednesday, November 19, defendant Anderson and codefendant Aron purchased a 1953

Packard automobile under the name of Henderson. Defendant Anderson paid $125 of the cost thereof. On Sunday, November 23, Anderson and Aron drove to Duluth. They explained their trip to Duluth by saying that they had consulted with two attorneys and had been advised to leave the city but not to leave the state and that they left the city as a result of such advice. Thereafter they made four or five trips between Duluth and the Twin Cities to procure changes of clothing and to consult their attorneys. On one of these trips the Packard automobile was traded in on a 1955 Buick.

On December 13, 1958, Anderson and Aron were arrested in a Duluth rooming house. The 1955 Buick contained various tools, including a sledge hammer and some saws. Anderson testified that he had purchased these tools in Duluth in anticipation of procuring a wrecking job or doing some cement finishing work. Three $100 bills were found in Anderson's possession. He testified that he had saved this money and that, while he had not been employed for some time, he was a gambler.

Anderson's defense is largely that of an alibi. He explains his whereabouts during the times involved as follows: On Friday, November 14, he met two men named Johnson and Farrell. They suggested that they "make" a liquor store, but defendant told them that he wanted nothing to do with such an affair. He parted with them and claims he was home before 10 p. m. On Saturday evening, November 15, while at home, he received a telephone call from his girl friend, one Betty Gay, who had arrived unexpectedly in the city with her mother from Freeport, Illinois, for the weekend. Defendant testified that he spent the entire weekend with Mrs. Betty Gay, most of which time was spent in his room. Defendant was corroborated by Mrs. Gay, who appeared as a witness for him. After Mrs. Gay had departed for her home on Monday, November 17, defendant again encountered Johnson, Farrell, and another man, and they offered to pay him for helping to move some liquor. It was defendant's testimony that he was near the apartment building in which Aron roomed, loading up his car, when the police arrived and that he and the others fled through the building. He then went home. Later Aron contacted him and the

two of them left the city together for Duluth, as has been stated above.

The state called as a rebuttal witness one Charles Howell, a probationer under sentence by the Federal authorities, who roomed with defendant Anderson. He testified that he had lived in defendant's apartment with Anderson since May 1958 and that Anderson was not at home in the apartment on the nights of November 15 or 16.

During all the time that defendant has been in custody, including the time he was transported from Duluth to Minneapolis by police officers, he has refused to name any other persons who might know anything about the burglary. He has maintained his innocence at all times as far as taking part in the burglary is concerned, his claim being that his only connection with the stolen liquor was his effort to move it for others for compensation.

The errors complained of by defendant relate largely to the trial court's charge to the jury and the trial court's failure to permit defendant's counsel to make certain comments to the jury, which will be discussed hereinafter.

■ The difficulty with defendant's objections to parts of the court's charge is that he attempted to separate into segments portions of the charge dealing with the same subject. It is elementary that the court's charge must be read as a whole. All that is said on one issue must be read together and if, when that is done, it correctly states the law on that issue in language that can be understood by the jury there is no reversible error.[1]

■ The first alleged error relates to the court's charge pertaining to the possession of stolen goods as evidence of guilt. The court's instruction on this phase of the case was:

"And, the State also relies upon the possession of, possession of some of this stolen property. There isn't any—I think there is little question; but at any rate Mr. Anderson testified that there was liquor there, I believe, I am not too sure he knew where it was; but at any rate he was at least in possession, or with people in possession of that liquor."

---

[1]State v. Rasmussen, 241 Minn. 310, 63 N. W. (2d) 1.

The court then discussed the question of possession by the codefendant, Aron, and then said:

"The possession of stolen property, recently after being stolen by one charged with its theft is evidence of the guilt of such person; but the force of such evidence, however, depends upon the facts in each particular case. Such possession does not raise a legal presumption or a conclusive presumption of guilt; but it is an item of evidence from which the jury might infer guilt."

The instruction as given is nearly identical with that approved in State v. Couplin, 146 Minn. 189, 178 N. W. 486.[2] It has been recognized that such possession is evidence of guilt in State v. Monroe, 142 Minn. 394, 172 N. W. 313, and State v. Johnson, 33 Minn. 34, 21 N. W. 843.

While defendant does not admit specifically that he had possession of some of the stolen property, it appears uncontroverted that some of the whiskey taken from Doyle's Liquor Store was found in an automobile registered in his name. He also admits that he was in the process of assisting others in moving the stolen goods when the police arrived at the apartment in which his codefendant, Aron, lived. The evidence is so overwhelming that he was in possession of some of the stolen property that we believe that the charge was entirely proper.[3]

Defendant relies principally upon State v. Hutchison, 121 Minn. 405, 141 N. W. 483. In that case the court instructed the jury that defendant could be found guilty unless he offered a reasonable explanation for his possession of stolen goods—which effectively shifted the burden of proving his innocence to the defendant. In this case there was no instruction which would have that result.

■ Next, defendant complains of the statement in the court's charge:

"And, I guess I can safely say from the evidence here that it is the claim of the State that these two men are guilty as principals."

---

[2]See, also, State v. Jatal, 152 Minn. 262, 188 N. W. 284.

[3]See, State v. Mueller, 218 Minn. 450, 16 N. W. (2d) 777; State v. Damuth, 135 Minn. 76, 160 N. W. 196.

This statement followed the court's definition of principals in the commission of a crime. The court stated the position of both the defendant and the state. It is proper for the court to review and state the claims of the parties as long as undue emphasis is not given to one side or the other.[4]

■ Defendant complains of the court's refusal to permit his counsel to comment on his willingness to submit to a lie-detector test. The right to comment on defendant's willingness or refusal to submit to such test depends on the admissibility of evidence showing such willingness or refusal. We have not had occasion to pass on this phase of the admissibility of lie-detector tests. In State v. Kolander, 236 Minn. 209, 52 N. W. (2d) 458, we held that it was reversible error to permit the state to show defendant's refusal to take such test. It is almost universally held that the result of a lie-detector test is inadmissible.[5] In those jurisdictions where the question has been considered, defendant's willingness to submit to a lie-detector test has been uniformly held inadmissible. Neither willingness nor refusal to submit to such test is admissible in evidence.[6] It has been held that the results of a lie-detector test are inadmissible even if favorable to defendant in spite of a stipulation signed by the state and the defendant that the results, no matter which way it turned out, could be admitted. LeFevre v. State, 242 Wis. 416, 8 N. W. (2d) 288.[7]

Inasmuch as the results of such tests are inadmissible, it must follow that the refusal or willingness of a defendant to take the test is also inadmissible. The evidence itself being inadmissible, comments on the refusal to take such test by the prosecution or the willingness to take such tests by the defendant would be improper. The court correctly held that such comments could not be made.

■ Defendant complains of the fact that the evidence upon which

---

[4]State v. Almos, 122 Minn. 479, 142 N. W. 801.

[5]State v. Kolander, 236 Minn. 209, 52 N. W. (2d) 458; Annotation, 23 A. L. R. (2d) 1306, and supplementary decisions.

[6]See, Commonwealth v. Saunders, 386 Pa. 149, 125 A. (2d) 442; People v. Carter, 48 Cal. (2d) 737, 312 P. (2d) 665.

[7]See, also, People v. Becker, 300 Mich. 562, 2 N. W. (2d) 503, 139 A. L. R. 1171.

the conviction rests is entirely circumstantial. We have frequently held that circumstantial evidence is sufficient to sustain a verdict of guilty if it meets the required quantum of proof.[8]

█ The only other error complained of that merits any discussion relates to the claim that defendant was unduly restricted in cross-examining Charles Howell for the purpose of impeaching his testimony. On cross-examination, Howell was interrogated as to the length of time he had lived with defendant. Defendant then sought to show that he actually did not live there but had procured a place of residence in order to comply with his probation requirements and that he actually lived with a woman by the name of Barbara. The following questions, objections, and answers appear from the record:

"Q Do you know a woman by the name of Barbara?

"A I think I know three or four by the name of Barbara.

"Q One particular one, that lives over on Logan?

"MR. MESHBESHER: I object—

"THE WITNESS: No.

"MR. MESHBESHER: (continuing)—to these questions as self serving and immaterial. Unless counsel can make an offer of proof, they are outside of the scope of the rebuttal.

"THE COURT: They are, the objections are sustained, if there is a question.

"Q (Mr. Mogren) Isn't it a fact that the only reason that you went over to Anderson's was because of your probation—

"MR. MESHBESHER: (interrupting) I object to the question—

"Q (Mr. Mogren continuing)—and the fact that you were living with another woman—

"MR. MESHBESHER: I object to the—

"THE COURT: (interrupting) Wait a minute. Now, the court reporter can't get both of you talking at once. You break up your question you are now asking. You have gone by one and you are into a second or a third question—

"MR. MOGREN: (interrupting) Yes.

---

[8]State v. Beltowski, 256 Minn. 220, 98 N. W. (2d) 252; State v. Anderson, 155 Minn. 132, 192 N. W. 934.

"THE COURT: Divide it up, one at a time.

"Q (Mr. Mogren) Isn't it a fact that the reason that you went to Mr. Anderson's home to live was that you were on probation and being investigated and that you had to have a place so that you could say you stayed there?

"A No.

"Q Isn't that what you told Mr. Anderson?

"A No, it isn't."

Inasmuch as defendant's counsel was successful in finally procuring an answer to the question which was originally excluded, there can hardly be any prejudice as a result of this performance.

■ There is also some claim that defendant's counsel was unduly limited in his argument to the jury in that he was not permitted to argue that certain evidence was excluded for the reason that it was hearsay. No error occurred in refusing to permit defendant's counsel to comment on inadmissible hearsay evidence.

We have examined a lengthy transcript in this case, and, while the conviction does rest on circumstantial evidence, it is sufficient to sustain the conviction, and we fail to find any error prejudicial to defendant that would justify a reversal.

Affirmed.