STATE of Minnesota, Appellant,

v.

Tim DAVIS, Respondent.

No. C1–85–1810.

Court of Appeals of Minnesota.

Feb. 11, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Marcia Rowland, Co. Atty., Harvey C. Ginsberg, Asst. Co. Atty., Chaska, for appellant.

Michael A. Fahey, Mary Kendall Adler, Nicklaus, Monroe, Fahey & Cooper, Chaska, for respondent.

Considered and decided by WOZNIAK, P.J., and FORSBERG, and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

The State appeals from a pretrial order suppressing evidence in a prosecution for first degree intrafamilial sexual abuse and first degree criminal sexual conduct. The order precluded the introduction of defendant's confession and subsequent statements because the confession was not voluntary and the statements were obtained as a result of the confession. The State contends the confession was voluntary and suppression will have a critical impact on the outcome of the trial.

We affirm.

## FACTS

On March 18, 1985, a 14-year-old girl told Chaska police officer Warren Breezee that the defendant, Tim Davis, had sexual intercourse with her numerous times during the past two years. Davis is the girl's stepfather. Breezee then phoned Davis and asked him to come to the Chaska Police Station. When Davis arrived, the officer read him a *Miranda* warning before questioning him about sexually assaulting the girl. Davis agreed to talk to the officer, but was not arrested or taken into custody. He also agreed to take a polygraph exam.

Breezee arranged for Davis to take a polygraph test the following day. Davis went to the Chaska police station and rode with Officer Breezee in a squad car to Minneapolis for the polygraph exam. Prior to the test, Breezee met with Charles Yeschke, the polygraph examiner, to review Breezee's reports and answer Yeschke's questions.

Davis signed a consent form acknowledging that he was voluntarily taking the polygraph exam. During the test, Yeschke left Davis alone in the room several times hooked up to the polygraph machine.

After the exam, Yeschke told Davis that the test results indicated he was not telling the truth when he denied having sexual contact with the young girl. Davis testified Yeschke told him he could take the polygraph test up to the supreme court if he (Yeschke) had to. Davis also said that Yeschke called him a "hot-blooded Cuban, one that could not be satisfied with having sex with just one person."

Yeschke denied making any statement about taking the polygraphs to the supreme court. He also denied making a remark about hot-blooded Cubans, but testified he said that some people are more hot-blooded than others. Yeschke did not advise Davis of his *Miranda* rights before or after the polygraph exam.

Following the discussion, Yeschke prepared a written confession which Davis signed. Yeschke testified he wrote what Davis told him and read the statement to Davis as he was writing it. He read it to him again after it was completed.

Davis testified that Breezee promised him treatment instead of jail time if he cooperated with Yeschke and pled guilty, and that the offense would not be made public. Davis testified Yeschke advised him to sign the statement and plead guilty. Breezee denies making any such promises.

Davis testified that he did not think he could change his mind about the polygraph test or that he was free to leave Yeschke's office at any time during the exam. He said he believed he was required to take the polygraph exam. Davis also said he was not told by Breezee or Yeschke that he could have refused to take the polygraph. Breezee admitted that he did not tell Davis

that he was free to leave during the first meeting at the Chaska Police Station. The officer testified he did not remember whether he told Davis he was free to go prior to the polygraph exam. However, Breezee said he informed Davis he was not under arrest and did not have to speak with him on the ride home from the polygraph exam.

### ISSUE

Did the trial court err in suppressing defendant's written confession and subsequent statements because the confession was not voluntary?

### ANALYSIS

In a pretrial appeal of a suppression order in a criminal case, the trial court's ruling will be reversed only "if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment * * * *." *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977).

Davis contends that the confession was involuntary and thus inadmissible because it was induced by threats, coercion and police promises. The State argues that Davis' confession was freely given and that he knowingly waived his right to remain silent following the polygraph exam.

■ Confessions must be voluntary before they can be admitted into evidence at trial. *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). Voluntary means "without compulsion or inducement of any sort." *Id.* at 513, 83 S.Ct. at 1343 (quoting *Wilson v. U.S.*, 162 U.S. 613, 623, 16 S.Ct. 895, 899, 40 L.Ed. 1090 (1896). To determine whether a confession is obtained through coercion the court must examine all the surrounding circumstances. *Id.*

■ In ordering suppression, the district court here determined: (1) that Yeschke, the polygraph examiner, exceeded his authority when he administered the test; (2) that the statement he prepared, which Davis later signed, was a result of impermissible and reprehensible remarks about sexual conduct of particular ethnic groups; (3) that Yeschke attempted to convince Davis that the polygraph test is foolproof; and (4) that the statement is not in Davis' own words. These findings are substantiated by evidence presented at the omnibus hearing. The trial court had adequate evidence to determine, based on the totality of the circumstances, that the confession was not voluntary.

The issue here is largely one of the relative credibility of Davis and Yeschke. Credibility determinations are for the finder of fact and should not be disturbed on appeal. *DeMars v. State*, 352 N.W.2d 13, 16 (Minn.1984). The trial court believed Davis' version of what occurred and did not err in suppressing Davis' confession and subsequent statements.

■ Respondent moved for attorney's fees pursuant to Minn.R.Crim.P. 28.04, subd. 2(6) which authorizes such an award for fees and costs incurred in responding to a pretrial appeal by the State. Based on the attorney's affidavit, we award respondent $1,211.25 for attorney's fees.

### DECISION

The trial court did not err in suppressing the confession and subsequent statements.

Affirmed.