**STATE of Minnesota, Respondent,**

v.

**Steven Lee ERICKSON, Appellant.**

**No. C5–86–1237.**

Court of Appeals of Minnesota.

March 31, 1987.
Review Denied April 29, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka Co. Atty., Marcy S. Crain, Asst. Co. Atty., Anoka, for respondent.

C. Paul Jones, Minnesota Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

This appeal deals with admissibility of incriminating statements made to a polygraph operator. We affirm a decision to admit the statements and we find no other trial court errors.

## FACTS

Criminal charges were brought against appellant Steven Lee Erickson following allegations of criminal sexual conduct. Appellant's 13–year old daughter told authorities that appellant engaged in various forms of sexual conduct with her, including sexual intercourse, between August 1982 and April 1985. Appellant denied the charges.

Anoka County authorities retained private investigator Charles Yeschke to examine appellant by administering a polygraph test. Appellant voluntarily appeared at the Anoka County Courthouse on December 11, 1985, with his attorney, Joseph Marvin. The investigator met with Marvin and explained the testing procedures. Marvin did not object to the procedures but told Yeschke that appellant had difficulty reading and writing. Particularly, Marvin did not object about Yeschke's policy to keep counsel out of the room during the test.

Yeschke gave Marvin a waiver form that Marvin was to review with appellant before appellant would be asked to sign it. The signed form would authorize Yeschke to report to Anoka County authorities on any statements appellant made to Yeschke. Appellant signed the form, and Yeschke administered the polygraph examination.

During the course of the exam appellant made several incriminating statements, declaring that he touched the bare breast and bare vagina of his daughter on several occasions during the past three years, but not sexually. Following the exam itself, Yeschke reviewed the results with appellant. "I sat in front of [appellant], explaining to him that the results indicate that he is not truthful with me * * *. He assured me that there was nothing more than touching her—[her] breasts and vagina over the clothing * * *."

Yeschke assisted appellant to prepare a written statement so that appellant would know what Yeschke was reporting to the authorities. The statement was prepared and written by Yeschke, based on appellant's declarations, and it was reviewed and signed by appellant. The statement read as follows:

Dear Investigator:

During the past three years I have needed to be close to [my daughter] as her father. On many occasions I did hug and kiss [her] as well as touch her

breasts and vagina. When I touched her breasts and vagina it was in a loving way and not a sexual way. I did not gain any sexual pleasure from touching her breasts and vagina. I only wanted to show my love and concern for her. It was a loving, touching only and I did not intend to have sex with [her].

I had no other sexual type contact with [my daughter] in the past three years other than kissing [her] on the breast over her clothing. This statement has been read to me by Mr. Yeschke and I understand it. Mr. Yeschke has treated me fairly today, no one has promised me anything or threatened me in any way to make this statement."

The above is true.

Signed: Steven L. Erickson

The omnibus hearing judge ruled that appellant's oral statements and the signed letter were voluntarily given and not in violation of appellant's right to counsel. This ruling was confirmed by the trial judge and the evidence was admitted at trial.

Appellant was convicted of six alternate counts of criminal sexual conduct in the first and second degrees. He was adjudicated guilty of one count of criminal sexual conduct in the first degree, Minn.Stat. § 609.342, subd. 1(a) (Supp.1985), and was sentenced to 45 months in prison. On appeal he raises a number of issues to support the contention that he was denied a fair trial.

## ISSUES

1. Did the trial court err in admitting statements made by appellant during a polygraph examination?

2. Was appellant otherwise deprived of a fair trial?

## ANALYSIS

1. Polygraph test results are "almost universally held" inadmissible. *State v. Anderson,* 261 Minn. 431, 437, 113 N.W.2d 4, 8 (1962) (citing *State v. Kolander,* 236 Minn. 209, 52 N.W.2d 458 (1952)). The

"refusal or willingness of a defendant to take the test is also inadmissible." *Anderson,* 261 Minn. at 437, 113 N.W.2d at 8. *See Kolander,* 236 Minn. at 222, 52 N.W.2d at 465–66 (new trial required when court admitted evidence of defendant's refusal to take polygraph).

In *Kolander,* the Minnesota Supreme Court explained the basis for the rule: "the lie-detector has not yet attained such scientific and psychological accuracy, nor its operators such sureness of interpretation of results shown therefrom, as to justify submission thereof to a jury * * *." *Kolander,* 236 Minn. at 221, 52 N.W.2d at 465. In more recent decisions, the supreme court has consistently refused to reconsider the "long-established" rule. *State v. Michaeloff,* 324 N.W.2d 926, 927 (Minn.1982); *State v. Goblirsch,* 309 Minn. 401, 407, 246 N.W.2d 12, 15 (1976); *State v. Perry,* 274 Minn. 1, 12–13, 142 N.W.2d 573, 580 (1966).

The polygraph is, however, used as an interrogation or investigatory tool by law enforcement authorities, and "may frequently lead to confessions or the discovery of facts which may ultimately lead to the solution of many crimes * * *." *Kolander,* 236 Minn. at 221, 52 N.W.2d at 465. A majority of the states have "held that admissions made by an accused during the course of a polygraph examination are admissible where found to be voluntarily made." *State v. Blosser,* 221 Kan. 59, 61–62, 558 P.2d 105, 107–08 (1976) (finding only a single exception to the majority rule). *See also Wyrick v. Fields,* 459 U.S. 42, 48 n. *, 103 S.Ct. 394, 396 n. *, 74 L.Ed.2d 214 (1982) (although the results of a polygraph examination might not have been admissible evidence under Missouri state law, statements "made in response to questioning during the course of the polygraph examination surely would have been").

The majority rule applies the constitutional requirement for all criminal cases that the "prosecution must demonstrate * * * that [the accused's] confession was voluntary." *United States v. Little Bear,* 583 F.2d 411, 413 (8th Cir.1978) (citing *Lego*

v. *Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972)). *See also State v. Orscanin,* 283 N.W.2d 897, 899 (Minn.), *cert. denied,* 444 U.S. 970, 100 S.Ct. 464, 62 L.Ed.2d 385 (1979). In determining voluntariness, the court must consider the totality of relevant circumstances. *Id.* A waiver permitting the disclosure and use of such statements must also be shown to be knowing, intelligent, and voluntary. *State v. Linder,* 268 N.W.2d 734, 735 (Minn.1978) (determination of the voluntariness of a waiver involves "the same kind of inquiry basically that is made to determine whether a statement is 'voluntary' within the meaning of the traditional voluntariness requirement").

■ The omnibus hearing court found Yeschke was acting as an agent of the State when he administered the polygraph examination. The issue of voluntariness has not come before the Minnesota Supreme Court in the context of statements made to a polygraph examiner who was not a police officer or investigator. The supreme court has, however, reviewed a trial court's determination that a defendant's confession to police officers after being told he failed a polygraph examination was voluntary under the totality of the circumstances. *See State v. Jungbauer,* 348 N.W.2d 344, 346 (Minn.1984).

In *Jungbauer,* the supreme court criticized a promise made to the defendant by the police that if he confessed they would release him on his own recognizance and use a summons rather than an arrest warrant to bring him in after he was formally charged. *Id.* at 346. The court nevertheless upheld the trial court's determination, citing the absence of misrepresentation by the police as to the reliability or admissibility of the test results, the lack of prolonged interrogation, the fact that the promise was not the sort of promise that might tempt an innocent person to confess, and the defendant's previous exercise of his right to silence. *Id.* at 346–47 (the making of a promise does not automatically render any confession involuntary; rather, the

court must consider all circumstances and factors that bear on voluntariness).

This court has had one previous opportunity to consider the voluntariness of statements made to a polygraph examiner who was not a police officer or investigator. *See State v. Davis,* 381 N.W.2d 86 (Minn. Ct.App.1986). In *Davis,* the issue was "largely one of the relative credibility of Davis and [the polygraph examiner]," and the trial court "believed Davis' version of what occurred * * *." *Id.* at 88. The trial court in *Davis* found the examiner had exceeded his authority when he administered the test, had attempted to convince the defendant that the polygraph test is foolproof, that the written statement he prepared was a result of impermissible and reprehensible remarks, and that the statement was not in the defendant's own words. *Id.* Giving deference the trial court's latitude in credibility determinations, this court found the "trial court had adequate evidence to determine, based on the totality of the circumstances, that the confession was not voluntary." *Id.*

The procedure used by the polygraph operator in *Davis* was similar to that employed here, including the use of a signed consent form and the preparation by the examiner of a written statement for the examinee to sign. However, unlike *Davis,* appellant had an attorney who advised him and who discussed the procedure with Yeschke before the examination began. The omnibus hearing court found appellant's attorney presented no objections, questions, or limitations to Yeschke other than to caution him that appellant had difficulty reading and writing. The attorney also reviewed the waiver form with appellant before appellant entered the examination room.

It is equally significant that appellant does not claim Yeschke made any promises, threats, or misrepresentations to him such as those alleged in *Davis.* Rather, appellant argues Yeschke employed "psychologically coercive" tactics during the polygraph examination. After considering and making findings on all the relevant circum-

stances, the omnibus hearing court rejected this view of the facts. *See Linder*, 268 N.W.2d at 735 (trial court must proceed under a totality of the circumstances approach).

Appellant is 35 years old, has an eighth grade education, and is of sufficient intelligence, maturity and experience to understand his rights. Yeschke testified appellant understood the procedure, his rights, and the statements he made. No police officers were present. The interview was conducted in a conference room. Appellant's attorney made no objection to his exclusion from the examination room. No weapons were displayed. Yeschke did not misrepresent the reliability of the polygraph machine or imply the test results were admissible. Appellant's difficulty in reading and writing was taken into account by Yeschke as he read the waiver form slowly and clearly. Although Yeschke prepared the letter, he reviewed it several times with appellant.

The omnibus hearing court concluded appellant's statements were voluntarily given. *See Orscanin*, 283 N.W.2d at 899. The record supports the conclusion that appellant understood his rights, spoke voluntarily with Yeschke, signed the waiver, and understood its implications. *See Little Bear*, 583 F.2d at 413–14 (despite the "often coercive impact of a lie detector test" and the defendant's lack of sophistication, the trial court committed no error in denying the motion to suppress statements made to a polygraph operator when she not only signed the waiver but also understood what it meant). Thus, the omnibus court did not err in ruling that appellant's admissions to Yeschke were given voluntarily.

■ Appellant also asserts his statements were obtained in violation of his right to counsel. The trial court found appellant waived his right to have counsel present during the polygraph exam questioning.

There is no question that appellant's right to counsel had attached. *Brewer v. Williams*, 430 U.S. 387, 401, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977). The sixth amendment prohibits the government from eliciting incriminating statements unless a valid waiver is obtained. *State v. Kivimaki*, 345 N.W.2d 759, 763 (Minn.1984).

Appellant and his attorney voluntarily appeared for a polygraph examination. Yeschke explained to Marvin that the examination consisted of four parts: the preliminary interview, the review of the questions, the test itself, and a review of the results with the examinee. Yeschke asked Marvin to review a waiver form with appellant prior to the examination. Marvin knew that no attorneys would be allowed in the room during the polygraph examination. Marvin had no objections to any of the procedures used. Appellant voluntarily entered the examination room with Yeschke.

We conclude the omnibus hearing court did not clearly err in determining that appellant voluntarily, knowingly, and intelligently waived his right to counsel and thus properly admitted the statements at trial.

2. We have examined but find no merit in five additional claims of trial court error.

■ a. Prior to trial the court held an in-camera hearing regarding the State's request to introduce *Spreigl* evidence that appellant sexually assaulted his younger daughter at his apartment during a visitation two years before trial. The trial court gave a cautionary instruction before the witness testified and in its final instructions. The daughter testified that when she was 10 years old and visiting appellant, he asked her to go into his bedroom. There he touched her breasts and massaged her vaginal area, under her underwear. Appellant stopped when someone knocked at the door.

The trial court's decision admitting *Spreigl* evidence will not be reversed absent an abuse of discretion. *State v. Ture*, 353 N.W.2d 502, 515 (Minn.1984). The evidence must be relevant, its probative value should outweigh the potential for unfair prejudice, and the defendant's participation in the prior offense should be clear and

convincing. *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983).

Here the incident was relevant because the evidence was not remote and showed a similar scheme in terms of location and modus operandi. The evidence was clear and convincing based on the daughter's testimony, and was highly probative. We find no abuse of discretion in admitting the *Spreigl* evidence.

■ b. Before trial the court ruled that no reference could be made to the polygraph examination. In his direct examination, appellant unresponsively answered his own counsel's question by stating, "I volunteered for the polygraph to say the truth." Appellant's motion for a mistrial during recess was denied and defense counsel refused the trial court's request to give the jury a cautionary instruction.

We find no prejudice in appellant's unresponsive comment that he volunteered to take a polygraph. His remark did not indicate that he took a polygraph test. There was no error in denying appellant's request for a mistrial.

■ c. Appellant claims the evidence is insufficient to support the convictions. Based on a review of the record we conclude otherwise. The victim's testimony in this case was clear and consistent and her version of the events was corroborated by several witnesses. Appellant's incriminating statements to the polygraph examiner support the verdict.

■ d. In its oral instructions the trial court mentioned the victim's testimony need not be corroborated. This statement is true, Minn.Stat. § .609.347, subd. 1 (1984), but it should not have been included in the instructions. *State v. Williams,* 363 N.W.2d 911, 914 (Minn.Ct.App.1985), *pet. for rev. denied,* (May 1, 1985). Defense counsel did not object to the instruction. In the written copy of instructions, the court deleted the reference to corroboration. Failure to object forfeits this issue for appeal purposes. In addition, when viewed as a whole, the instructions were not prejudicial. *See id.*

e. Appellant contends that several portions of the prosecutor's closing argument were improper. Defense counsel did not raise this issue at trial and this subject is waived on appeal. *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984).

### DECISION

Appellant was convicted in a fairly conducted trial proceeding and his conviction must be affirmed.

Affirmed.