PEOPLE v RAY

Docket No. 80168. Argued December 8, 1987 (Calendar No. 3). Decided
        September 8, 1988.

Daniel E. Ray was convicted by a jury in the Genesee Circuit
        Court, Donald R. Freeman, J., of arson of a dwelling. The Court
        of Appeals, Beasley, P.J., and Hood, J. (Walsh, J., dissenting),
        remanded the case to the trial court to conduct a separate
        hearing outside the presence of the jury to determine whether
        the defendant had waived his Fifth Amendment right to re-
        main silent and his Fifth and Sixth Amendment rights to the
        presence of counsel at a postpolygraph interrogation during
        which the defendant made an allegedly incriminating state-
        ment (Docket No. 82573). The people appeal.

In an opinion by Justice Boyle, joined by Chief Justice Riley
        and Justices Brickley, Archer, and Griffin, the Supreme
        Court held:

Neither state or federal law nor public policy requires the
        automatic suppression at trial of statements made by a defen-
        dant during the administration of a polygraphic examination.
        In this case, the facts did not present an issue which required
        the trial court, sua sponte, to conduct a separate hearing to
        determine whether the defendant made an intelligent and
        voluntary waiver of his Fifth and Sixth Amendment rights.

1. Results of polygraph examinations are not admissible at
        trial. The basic rationale for preclusion is that the technique
        has not received the degree of acceptance or standardization
        among scientists which would allow admissibility. The reliabil-
        ity of statements made during a polygraph examination, how-
        ever, does not depend on the validity of the polygraph examina-
        tion or on the examiner's skill in conducting the test or
        interpreting the results, nor does use of such statements im-

REFERENCES

Am Jur 2d, Evidence §§ 526 et seq., 551, 582 et seq., 832.

Admissibility of polygraph evidence at trial on issue of voluntari-
        ness of confession made by accused. 92 ALR3d 1317.

Admissibility in evidence of confession made by accused in anticipa-
        tion of, during, or following polygraph examination. 89 ALR3d
        230.

properly denigrate cross-examination. Such statements may be reliable and voluntary even though made during the course of a polygraph examination. The key inquiry is whether the statements are voluntary and is to be made on the basis of the facts of each case. Blanket prohibition of polygraph use in investigations is not warranted. Neither public policy nor federal or state law requires that statements made before, during, or after the administration of a polygraph examination be excluded per se as evidence at trial.

2. Where a defendant challenges the voluntariness of a confession, a separate hearing outside the presence of the jury must be conducted to determine voluntariness. Absent a challenge by the defendant, a trial court may have a duty to raise the issue on its own where the alerting circumstances, such as a defendant's mental, emotional, or physical condition, evidence of police threats, or other obvious forms of physical and mental distress, clearly and substantially raise a question of voluntariness or implicate other due process concerns.

3. In this case, the facts raise no clear and substantial questions regarding whether the defendant voluntarily waived his Fifth Amendment right against self-incrimination or his Fifth and Sixth Amendment rights to counsel. The defendant voluntarily submitted to the polygraph examination and, while in the presence of counsel, was instructed regarding his rights and signed a written waiver of his right to counsel during the examination and the questioning immediately preceding and following the examination. Under the circumstances, it was not necessary to rewarn the defendant of his rights immediately after the polygraph machine was shut off. The admissibility of such statements is to be resolved by determining whether in the totality of the circumstances the waiver could have been knowing and voluntary.

Justice ARCHER, concurring, stated that the totality of the circumstances approach toward a defendant's waiver of his rights to counsel encompasses the state's duty to prove that the waiver was an intentional and intelligent relinquishment of a known right and that the defendant was apprised of the nature of the protection which an attorney can provide.

Judgment of the Court of Appeals vacated and conviction affirmed.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that the Court of Appeals has broad authority to order evidentiary hearings whenever in its judgment such hearings are necessary or appropriate to enable it to discharge its reviewing function. In this case, it was within its authority to order an

evidentiary hearing to determine whether the defendant voluntarily waived his rights to remain silent and to have counsel present at the postpolygraphic interrogation.

156 Mich App 31; 401 NW2d 296 (1986) vacated.

1. Criminal Law — Confessions — Polygraph Examinations.

Neither state or federal law nor public policy requires the automatic suppression at trial of statements made by a defendant during the administration of a polygraphic examination.

2. Criminal Law — Polygraph Examinations — Separate Statements.

Results of polygraph examinations are not admissible at trial; however, statements made during a polygraph examination, may be reliable and voluntary and are not required to be excluded per se as evidence at trial.

3. Criminal Law — Confessions — Voluntariness — *Walker* Hearings.

Where a defendant did not challenge the voluntariness of a confession and no alerting circumstances clearly and substantially raised the question of voluntariness, a trial court did not have a duty, sua sponte, to conduct a separate hearing out of the presence of the jury to inquire into the voluntariness of the defendant's statements.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Mark Sanford,* Assistant Prosecuting Attorney, for the plaintiff.

*Terrance P. Sheehan* for the defendant.

Boyle, J.

### INTRODUCTION

This Court granted leave to appeal in the instant case to resolve two questions. We are asked to determine first, whether statements made by a defendant during the course of a polygraph examination should be admissible at trial as a matter of state or federal constitutional law or public policy. Secondly, we must determine whether the Court of

Appeals erred in this case in imposing a duty on the trial court to hold a *Walker*[1] hearing sua sponte in the presence of alerting circumstances.

We hold that neither state or federal law nor public policy requires the automatic suppression at trial of statements made by a defendant during the administration of a polygraph examination. We further hold that the facts of this case did not present an issue which required the trial court to conduct a *Walker* hearing sua sponte in order to determine whether the defendant made an intelligent and voluntary waiver of his Fifth and Sixth Amendment rights.[2]

## I. FACTS

The defendant was convicted by a jury in the Genesee Circuit Court of arson of a dwelling. He was sentenced to serve not less than 160 months nor more than 240 months in prison.

The Court of Appeals remanded the case to the trial court for the purpose of holding a *Walker* hearing to determine whether the defendant had waived his Fifth Amendment right to remain silent and his Fifth and Sixth Amendment rights to the presence of counsel at a postpolygraph interrogation during which defendant made an allegedly incriminating statement. The Court of Appeals ordered that if the trial court were to find on remand that there was an ineffective waiver, de-

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[2] The issue in this case is not whether "the Court of Appeals was within its authority in ordering an evidentiary hearing," as the dissent suggests. *Post*, p 279. The issue is whether the Court of Appeals was correct in concluding that because of alerting circumstances the trial court erred in not sua sponte ordering a hearing. Defendant does not claim on appeal that trial counsel sought a hearing that was denied, nor does he make any allegations of fact that his statement was involuntary or not knowingly and understandingly made. The issue is one of law; whether the ambiguity of the form imposed a duty on the trial court to hold a hearing.

fendant's confession should be suppressed, the conviction set aside, and a new trial ordered. On a finding of a valid waiver, the defendant's conviction is affirmed.

The Court of Appeals summarized the testimony produced at trial as follows:

The charge against defendant arose out of a fire which started in an apartment formerly occupied by two of defendant's friends. The evidence presented at trial revealed that the fire had been intentionally set. The evidence also revealed that on the day preceding the fire, defendant had assisted his two friends in moving out of the apartment. The landlord of the apartment had evicted defendant's friends for nonpayment of rent.

A neighbor of defendant's friends testified that just before the fire started he observed a man flicking a butane lighter on the patio of the apartment where the fire started. The neighbor also testified that he had seen the man earlier in the day helping someone move out of the apartment. The neighbor went on to testify that he had reported his observations to the police and, in a photographic lineup conducted on the day following the fire, he had identified defendant as the man who had been flicking the lighter. As a vital part of his case, the prosecutor also offered the testimony of a state police sergeant that defendant had allegedly confessed to setting the fire, which testimony was admitted over the objection of defendant.

Defendant testified at trial. He admitted that he had been in the general area of the apartment building when the fire started, but he denied any involvement in starting the fire. Through his own testimony, defendant went on to assert an alibi defense. He claimed that he and one of his friends who had just moved out of the apartment had been driving near the apartment building when they saw the fire. Defendant testified that after he and his friend saw the fire they went to the scene

to watch. Defendant also denied that he had confessed. [156 Mich App 31, 34-35; 401 NW2d 296 (1986).]

## II. SHOULD STATEMENTS MADE BY A DEFENDANT DURING THE COURSE OF A POLYGRAPH TEST BE ADMISSIBLE AT TRIAL AS A MATTER OF STATE OR FEDERAL CONSTITUTIONAL LAW OR PUBLIC POLICY?

In *People v Barbara,* 400 Mich 352, 364; 255 NW2d 171 (1977), this Court held that the results of a polygraph examination are not admissible at trial. The basic rationale for the *Barbara* Court's conclusion was that the polygraph technique had not received the degree of acceptance or standardization among scientists which would allow admissibility. *Id.* See also *People v Davis,* 343 Mich 348, 370; 72 NW2d 269 (1955), quoting *People v Becker,* 300 Mich 562, 566; 2 NW2d 503 (1942).

The judicial concern with scientific consensus regarding the procedure is because " 'the quantity [the polygraph] attempts to measure—the truthfulness of a witness—is . . . directly related to the essence of the trial process.' " *People v Barbara, supra,* p 404, quoting note, *The emergence of the polygraph at trial,* 73 Colum L R 1120, 1141 (1973). Thus, exclusion at trial of polygraph results rests upon the judicial estimate that the trier of fact will give disproportionate weight to the results and consider the evidence as conclusive proof of guilt or innocence. See also McCormick, Evidence (2d ed), § 207, p 507.

The question whether statements made before, during, or after the administration of a polygraph examination, as opposed to the results themselves, should be excluded from trial as a matter of law or public policy has never been specifically addressed by this Court.

The general rule in other jurisdictions is that statements are not inadmissible merely because they were made during the course of a polygraph examination. Anno: *Admissibility in evidence of confession made by accused in anticipation of, during, or following polygraph examination,* 89 ALR3d 230. *State v Erickson,* 403 NW2d 281 (Minn App, 1987). In general, a defendant will be unsuccessful in challenging the admissibility of an alleged polygraph-induced confession unless specific coercive conduct or a denial of constitutional rights can be shown, as opposed to a mere allegation that the polygraph examination improperly influenced the defendant's confession of the crime.

The defendant argues that because the polygraph test is scientifically unsound, it should not be used by police agencies and prosecutors as an investigative technique to secure admissions or confessions.

The fact that a test has not been deemed sufficiently reliable to authorize admission of the results in evidence does not support a logical inference that the defendant's statements made during or following the test are not reliable. The premise cannot support the defendant's conclusion because the statements made by an examinee during a polygraph examination *can be* disassociated from the underlying test.

By contrast, the rationale for excluding the results of hypnotically induced testimony extends to statements made after the examination, *People v Gonzales,* 415 Mich 615; 329 NW2d 743 (1982). During hypnosis the subject is in a condition of altered consciousness marked by heightened suggestibility. *Id.,* p 623. Hypnosis contributes to the formation of memories, to a belief in the truth of those memories, and to the inability of the individual or any other person to distinguish between the

real, but repressed, memories and those memories
induced by the hypnosis. *Id.* Consequently, because
the process of hypnosis "is not a reliable means of
accurately restoring forgotten incidents," *id.,* p
626, and because posthypnotic testimony would
unfairly denigrate the defendant's right to cross-
examination, the testimony of witnesses is ex-
cluded. However, the use of hypnosis has not been
foreclosed "as an extremely useful investigative
tool," *id.,* p 627, and we also have held that
statements made before hypnosis that are not
associated with the process are not excludable.
*People v Nixon,* 421 Mich 79; 364 NW2d 593
(1984).

The reliability of statements made during a
polygraph examination does not depend on the
validity of the polygraph test or the examiner's
skill in conducting the test or interpreting its
results, nor does the use of such statements im-
properly denigrate effective cross-examination. It
follows, then, that a statement may be reliable and
voluntary even though it was made during the
course of a polygraph examination. See *State v
Blosser,* 221 Kan 59, 60-63; 558 P2d 105 (1976).
The key inquiry is whether the statement[3] is vol-
untary, and such a determination is best made on
the facts of each case.

The defendant further submits that there is
confusion and ambiguity concerning the admissi-
bility of statements obtained during the adminis-
tration of a polygraph examination. We recognize
a potential for confusion exists in a situation
where a defendant may not knowingly and intelli-
gently waive certain rights *if* the distinction be-
tween results of a polygraph examination and
statements made before, during, or after a poly-

[3] See *Jackson v Denno,* 378 US 368, 385-386; 84 S Ct 1774; 12 L Ed
2d 908 (1964).

graph examination is not adequately explained to the defendant. See, e.g., *People v Leonard,* 421 Mich 207; 364 NW2d 625 (1984). However, not every situation involving the administration of a polygraph examination will give rise to this potential confusion. Where the distinction is sufficiently explained and the defendant is capable of understanding the distinction, a knowing and voluntary waiver of rights is clearly a possibility. Accordingly, a claim by a defendant that such confusion prevented a knowing and voluntary waiver of his rights can only be decided on a case-by-case basis.[4]

Therefore, we conclude, as have the overwhelming majority of jurisdictions that have considered the issue, that a blanket prohibition of polygraph use in investigative practices is not warranted. Further, we conclude that neither public policy nor federal or state law requires that statements made before, during, or after the administration of a polygraph examination are excludable per se as evidence at trial. Current procedures designed to test the voluntariness of such statements are adequate to insure that a statement that is unreliable or obtained without a knowing and intelligent waiver of a defendant's rights will not be used at trial.

### III. DID THE COURT OF APPEALS ERR IN IMPOSING A DUTY ON THE TRIAL JUDGE TO HOLD A *WALKER* HEARING SUA SPONTE IN THE PRESENCE OF ALERTING CIRCUMSTANCES?

In the landmark case, *Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964), the

[4] The defendant does not claim that he failed to understand the advice of rights because of confusion or ambiguities in the waiver form.

United States Supreme Court held that the constitution requires that at some point during criminal proceedings a defendant have the right to object to the use of his confession and to have a fair hearing and reliable determination on the issue of voluntariness. In a later case, *Wainwright v Sykes,* 433 US 72; 97 S Ct 2497; 53 L Ed 2d 594 (1977), the Court further held, however, that "the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession." *Id.,* p 86.

Michigan follows the so-called "orthodox" rule providing for a separate hearing outside the presence of the jury for the purpose of allowing the trial judge to determine the voluntariness of a confession. If the judge finds the confession to be involuntary, the matter ends there and the jury never considers it. If the confession is found to be voluntary, it is admitted with jury consideration limited only to weight and credibility, *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965). Michigan also requires that a defendant challenge the voluntariness of a confession before demanding that a *Walker* hearing be held. *People v Shipp,* 21 Mich App 415, 420; 175 NW2d 529 (1970); *People v Hooks,* 112 Mich App 477; 316 NW2d 245 (1982).

In *People v Hooks, supra,* p 480, Judge RILEY recognized an exception to the general raise-or-waive rule where the factual situation itself raises a substantial question of voluntariness. "Alerting circumstances may be a defendant's mental, emotional or physical condition, evidence of police threats, or other obvious forms of physical and mental duress."

The reason for the alerting-circumstances exception is that a conviction based on an involuntary

confession deprives the defendant of due process.[5]
" '[T]he proscription against the use of involuntary
confessions reflects the basic societal conviction
that the very integrity of the criminal justice
system is compromised when it operates to take
advantage of a person whose volitional capacity is
seriously impaired.' " *Hooks, supra,* p 481, quoting
*United States v Powe,* 192 US App DC 224, 232;
591 F2d 833 (1978). See also *United States v
Renteria,* 625 F2d 1279, 1283 (CA 5, 1980); *United
States v Bentley,* 726 F2d 1124, 1128-1129 (CA 6,
1984); *United States v Taylor,* 374 F2d 753, 756
(CA 7, 1967); *Hizel v Sigler,* 430 F2d 1398, 1400-
1401 (CA 8, 1970); *Jacobson v California,* 431 F2d
1017, 1018-1019 (CA 9, 1970); *United States v
Hart,* 729 F2d 662, 666 (CA 10, 1984); *United
States ex rel Gainer v New Jersey,* 278 F Supp 127
(D NJ, 1967); *Commonwealth v Harris,* 371 Mass
462; 358 NE2d 982 (1976); *State v Pearce,* 266 NC
234; 145 SE2d 918 (1966).

In *Hooks,* the incriminating statement was ob-
tained roughly eight hours after the defendant had
been seriously wounded in the chest and struck on
the head. At the time of the statement, he was
attached to a life-support machine, had various
tubes attached to his body, was in pain, under
medication, and in a weakened state both physi-
cally and mentally. The defendant also testified
that he had not read the officer's transcription of
his statement before he signed it and that the
officer had to hold his head up so that he could see
the line he was signing.

The weakened mental and physical state of the

---

[5] Similar considerations arise when the evidence raises sufficient
doubt as to defendant's competency to stand trial. Because the convic-
tion of a legally incompetent defendant is a deprivation of due
process, evidence that raises a "bona fide" doubt as to competence
obligates a sanity hearing sua sponte. *Pate v Robinson,* 383 US 375,
385; 86 S Ct 836; 15 L Ed 2d 815 (1966).

defendant was considered sufficient to present "an alerting circumstance which should have triggered the court's *sua sponte* inquiry into the voluntariness of the statement." *Hooks, supra,* p 482. Because the burden placed upon the trial court by this holding was "immense," Judge RILEY emphasized the necessity to rule narrowly on the basis of the extreme facts of the case.

Undoubtedly, certain alerting circumstances require the trial court to raise the issue of voluntariness on its own. We also agree that because of the heavy burden placed upon the trial court by such a rule, the *Hooks* rule is limited to those cases in which the evidence clearly and substantially reflects a question about the voluntary nature of a confession or implicates other due process concerns. We do not find in this case any challenge to the defendant's statements that raise a due process issue regarding the defendant's physical or mental capacity to make a voluntary statement,[6] as in *People v Hooks, supra,* and, therefore, this exception to the general raise-or-waive rule is inapplicable. The rule of *Jackson v Denno, supra,* and the exception to the raise-or-waive rule is directed to those situations in which a confession might be involuntary in the traditional sense that that term was historically used in Fifth Amend-

[6] The United States Supreme Court has recently articulated a distinction between the interest protected by *Miranda,* the due process "voluntariness" inquiry, and the concerns underlying the evidentiary issue of reliability. In *Colorado v Connelly,* 479 US 157; 107 S Ct 515; 93 L Ed 2d 473 (1986), the Court held that coercive governmental activity was the aim of the due process voluntariness issue, that such activity is a predicate to finding that a confession is not voluntary within the meaning of the Due Process Clause, and that "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that . . . ," *supra,* 479 US 170. The Court concluded that in the absence of police overreaching, the respondent's mental condition did not preclude a finding of a voluntary waiver of *Miranda* rights, and that the admissibility of such statements is to be resolved by state laws governing the admission of evidence.

ment jurisprudence. See, e.g., *Payne v Arkansas,* 356 US 560; 78 S Ct 844; 2 L Ed 2d 975 (1958); *Haynes v Washington,* 373 US 503; 83 S Ct 1336; 10 L Ed 2d 513 (1963). In this case, the Court of Appeals has extended the *Hooks* exception to require an additional inquiry sua sponte regarding whether the defendant made an intelligent and voluntary waiver of the prophylactic rules of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and the Sixth Amendment right to counsel. Perhaps because over time the profession has come to use the term, "*Walker* hearing" to refer to that phase of motion practice in which all issues of admissibility of a defendant's statements are resolved,[7] the Court of Appeals did not distinguish the voluntariness issue from the separate and distinct concerns addressed in *Miranda.* The Court of Appeals decision focuses on whether the defendant's Fifth Amendment right against self-incrimination and his Fifth and Sixth Amendment rights to counsel were validly waived as opposed to whether the defendant's confession was voluntary. However, as the Supreme Court has observed, a "simple failure" to administer *Miranda* warnings is not in itself a violation of the Fifth Amendment. *Oregon v Elstad,* 470 US 298, 306, n 1; 105 S Ct 1285; 84 L Ed 2d 222 (1985).

The *Miranda* exclusionary rule, however, serves

---

[7] It is not only difficult to conclude that the circuit judge should have been alerted to a need for a *Walker* hearing on the basis of an alleged ambiguity in the waiver form, but since the defendant's motion to suppress was renewed, it is even more difficult to conclude what the remand would encompass. Presumably since the defendant's counsel did challenge the admissibility of the statement, but did not call defendant to the stand, the remand would be for this purpose. However, defendant does not claim he did not understand the waiver form or that counsel was ineffective. Although the opportunity was available to the defendant and his trial counsel at the circuit court hearing, it was not exercised. There is nothing in defendant's pleadings to suggest that it would be exercised at the hearing on remand which the Court of Appeals has ordered.

the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself. It may be triggered even in the absence of a Fifth Amendment violation. The Fifth Amendment prohibits use by the prosecution in its case in chief only of *compelled* testimony. Failure to administer *Miranda* warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*. [*Id.* at 306-307.]

Clearly, this is not a case involving a voluntariness issue such as *Hooks*. We therefore conclude that *People v Hooks* did not require the remand to the trial court here ordered.

### IV. DID DEFENDANT WAIVE HIS CONSTITUTIONAL RIGHTS?

The primary grounds for the Court of Appeals decision to remand the case for a *Walker* hearing is an alleged ambiguity arising in the waiver form itself. The waiver form did not recite the well-established rule in Michigan that the results of a polygraph examination are not admissible at trial. *People v Barbara, supra.* Rather, it stated that any statements by the defendant made *during* the testing phase and questioning, *before* and *after,* could be used against him in a court of law. The Court of Appeals believed that these circumstances created an ambiguity in the acknowledgment portion of the waiver as to "whether *any* evidence would be admissible from the polygraph procedure." 156 Mich App 44. (Emphasis added.)

We disagree with the Court of Appeals that the facts of this case raised clear and substantial questions as to whether the defendant voluntarily

waived his *Miranda* right or his "Fifth[8] or Sixth Amendment" rights to counsel.

The facts indicate that the defendant was arrested on October 14, 1983, approximately one month after the fire. After he was arraigned, he was released on bond. On November 10, 1983, defendant voluntarily submitted to a polygraph examination. Defendant's counsel, Robin Wheaton, accompanied him to the Michigan State Police post in Flint where the examination was to take place.

Sergeant Bratton, who administered the interrogation and polygraph examination, testified that she read to the defendant in the presence of his attorney each of the statements in the acknowledgment and asked him if he understood his rights and was willing to waive them. The defendant replied in the affirmative, and then signed the acknowledgment included on the waiver form which included:

> I understand that I have the right to remain silent and that anything that I say during the testing phase and questioning, before or after, can be used against me in a court of law. I further understand that I may exercise my right to remain silent and stop answering questions at any time. [156 Mich App 36.]

[8] The prosecutor assumes for the sake of this argument only that defendant was in "custody" for *Miranda* purposes at the time of the examination. See *People v Lumley,* 154 Mich App 618; 398 NW2d 474 (1986).

In *Michigan v Tucker,* 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974), the Supreme Court recognized that there is a distinction between the Fifth Amendment privilege as such and the particular "procedural safeguards" defined in *Miranda* to assure that Fifth Amendment rights not be denied individuals in the context of custodial interrogation. There may also be a distinction between the adequacy of waiver required for a Fifth and a Sixth Amendment right. *People v Bladel (After Remand),* 421 Mich 39; 365 NW2d 56 (1984), aff'd sub nom *Michigan v Jackson,* 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986). In view of our conclusion that defendant's statements were properly admitted, we need not resolve this question.

During a separate hearing at trial, it was revealed that prior to the examination, and while in the presence of counsel, defendant signed a written waiver of his right to counsel during the examination and during the questioning immediately before and after the examination.

The waiver form was received into evidence. Also, during the separate record, Mr. Wheaton agreed with Sergeant Bratton that he had been present when the defendant was advised of his rights and waived them. He also elicited from the sergeant that these rights were not repeated immediately prior to the postexamination questioning which occurred approximately two hours after the initial warnings were given.

Sergeant Bratton was then permitted to testify at trial during the people's case in chief that after the examination she asked the defendant a rhetorical question, that she thought he and Rod Anderson had set fire to the apartment. Defendant allegedly responded, "Right."[9]

Before trial, defense counsel renewed his objection in a motion to suppress the statements. Defense counsel argued that although the examining officer read the defendant *Miranda* warnings prior to the polygraph examination, she did not do so again after the examination which continued for a considerable length of time, thus failing to insure that the defendant understood that the same protections applied after the test as before the test.

---

[9] The record establishes that at the preliminary examination trial counsel did not specify the reason for his objection to the admission of defendant's statement. Indeed, it appears that both the prosecutor and the defense counsel believed that it would be improper to inject evidence of the polygraph examination before the examining magistrate. Defense counsel ultimately withdrew the objection, relieving the prosecutor of any duty to introduce the waiver form. While it was inadvertently revealed that a polygraph examination was involved, that fact was not considered by the examining magistrate in his decision to bind over the defendant.

In denying the motion to suppress the statements, the circuit judge held that nothing in the testimony pinpointed a fatal passage of time between the *Miranda* warnings and the statement—therefore defendant's waiver applied to the postexamination interview. The issue thus presented on this record is whether the failure to readvise the defendant of *Miranda* rights at the conclusion of the examination prevents a voluntary and intelligent waiver per se.

We conclude in the circumstances of this case that it was not necessary to rewarn the defendant of his constitutional rights in the limited exchange that ensued immediately after the polygraph machine was shut off. In *Wyrick v Fields,* 459 US 42, 47; 103 S Ct 394; 74 L Ed 2d 214 (1982), the United States Supreme Court rejected the Eighth Circuit Court's holding that a failure to rewarn a suspect prior to the postpolygraph interview was a violation per se of his Fifth Amendment right to have counsel present at the interview. Recognizing that we are free to formulate another test, we adopt the *Wyrick* interpretation and hold that the admissibility of such statements is to be resolved by a review as to whether in the "totality of circumstances" the waiver of the Fifth Amendment right could be considered knowing and voluntary.

In this case, the only circumstance intervening between the preexamination rights and postexamination questioning which was alleged to be of moment was the two-hour time period that encompassed the preinterview conversation, the test itself and the postexamination interview. In addition, the same person who had warned defendant of his rights the first time, and who conducted the polygraph examination, also conducted the postexamination questioning. Cf. *United States v Gillyard,* 726 F2d 1426 (CA 9, 1984). Therefore, as in

*Wyrick,* it was not reasonable to expect a rewarning of those rights at that time. Finally, and most importantly, the defendant's waiver expressly extended to a postexamination interview.

Further, it is clear that this is not a situation in which defendant was isolated from counsel. While free on bond, the defendant appeared voluntarily for the examination and was accompanied by counsel who remained at the police station for the duration of the examination. Counsel and defendant were informed that counsel could not be present during the examination, yet counsel made no objection. See *State v Erickson, supra.* There is no allegation that the defendant wished to confer with counsel during the questioning but was not allowed to do so. Nor does the defendant contend that the questioning was beyond what was expected or agreed upon. Cf. *State v Baillargeon,* 124 NH 355; 470 A2d 915 (1983).

This case is distinguishable from *People v Leonard, supra.* In that case, a stipulation was entered into by the prosecutor and defense counsel whereby the results of the polygraph examination and opinions drawn therefrom would *not be admissible* in evidence. Defense counsel argued that the stipulation suppressed all evidence from questions during the examination, including any statements made by the defendant. In *Leonard,* it was quite clear that there was a misconception on the defendant's part as to what was and what was not to be admitted at trial.

In this case, the examining officer specifically informed the defendant that anything he might say during the testing phase and questioning, *before* or *after,* could be used against him in a court of law. Further, counsel was present when the defendant was so informed. Unlike *Leonard,* the instant defendant never attacked the state-

ment on the ground that because it was made during the course of a polygraph examination he believed the statement would be inadmissible at trial. Rather, the objection was based solely on the fact that the officer failed to rewarn the defendant of his constitutional rights.

### CONCLUSION

Clearly the issue in this case is distinguishable from that presented by *People v Hooks, supra.* The trial court was not obligated to conduct a further hearing to determine the voluntariness of a defendant's waiver of his right to remain silent or his Fifth or Sixth Amendment rights to counsel during interrogation. Therefore, the Court of Appeals erred in ordering a remand. Further, we find that this defendant made a voluntary and a valid waiver of his constitutional rights. There is no question that the defendant's rights were waivable or that on this record they were in fact waived.

RILEY, C.J., and BRICKLEY, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.

ARCHER, J. (*concurring*). I have signed Justice BOYLE's opinion because I consider the "totality of circumstances" approach toward the defendant's waiver of his right to counsel to encompass the factors listed within Chief Justice WILLIAMS' separate opinion in *People v Leonard,* 421 Mich 207, 224; 364 NW2d 625 (1984).

Finally, I note that the waiver form defendant signed on November 10, 1983, at 9:48 A.M., contained the following language:

I understand that the polygraph test and the questioning, before and after, cannot be conducted with a lawyer actually present in the examination room, and I am willing to waive his/her presence. However, I fully understand that I have the right

to talk with and have the assistance of a lawyer at any time during the polygraph test or questioning and that I may stop the test or questioning at any time and exercise that right.

Levin, J. (*dissenting*). The Court of Appeals was within its authority in ordering an evidentiary hearing on the questions whether Ray voluntarily waived his right to remain silent and to have his counsel present at the postpolygraph interrogation. The Court of Appeals has broad authority, no less so than this Court, to order an evidentiary hearing whenever in its judgment such a hearing is necessary or appropriate to enable it to discharge its reviewing function.[1]

The circumstances of this case indicate that there is reason to question the voluntariness of

---

[1] The majority in the Court of Appeals spoke of "clear error" in holding "that the magistrate and the acting circuit judge should have been alerted to the need for a *Walker* hearing." *People v Ray,* 156 Mich App 31, 44, 46-47; 401 NW2d 296 (1986).

Ray's lawyer moved in the circuit court to suppress evidence of the statement, "Right," stating that evidence of the statement had been introduced at the preliminary examination, that such a statement to be admissible in evidence must be voluntary, and that Ray's constitutional rights were violated because, among other things, the officer did not repeat the *Miranda* warnings after the conclusion of the polygraph examination. The motion asked the court to "suppress the Defendant's statement, or in the alternative, order an evidentiary hearing on this matter."

The acting circuit judge did not order an evidentiary hearing, but rather reviewed the preliminary examination transcript and found that the defendant freely and voluntarily made the statement. At the trial, the circuit judge, referring to the motion heard by the acting circuit judge, said "[t]hey, obviously, did not have to make a separate record" and declared that the "Court sustains the ruling made by the lower court, apparently in review of the suppression material."

The defendant's lawyer thus sought an evidentiary hearing. The motion to suppress the evidence was decided on the basis of the testimony at the preliminary examination which was not focused on the issue of the voluntariness of the statement, raised by defendant's motion filed after the preliminary examination. It thus appears that the issue was preserved by defendant's lawyer and that the circuit court erred in deciding the voluntariness issue without an evidentiary hearing.

Ray's "waiver." The "admission" or "confession"[2] at issue was made in response to questioning that occurred after the polygraph examination was completed. The "waiver" document states that the questioning before, during, and after the examination "cannot be conducted with a lawyer actually present in the examination room . . . ." Whatever may be the rationale for declaring that Ray's lawyer could not be present for questioning before and during the polygraph examination,[3] there is no apparent rationale for excluding his lawyer from the postpolygraph questioning.

The apparent overbreadth of the "waiver" and ambiguity noted by the Court of Appeals[4] justify its decision to order an evidentiary hearing on the questions whether Ray voluntarily waived his right to remain silent and to have his counsel present at the postpolygraph interrogation.

In all events, there is no need to express an opinion concerning the admissibility of statements made during the polygraph examination itself as no such question is raised by the instant case.

[2] During the polygraph examination, Ray denied culpability. After the examination, the police sergeant who administered the examination told Ray that she thought that Ray and a friend set the fire. Ray responded, "Right."

[3] The rationale asserted for excluding defense counsel from questioning before and during the polygraph examination is that in both periods the examinee is linked to the machine, and the presence of persons other than the examiner and the examinee may distort the physiological responses monitored by the polygraph device. See Reid & Inbau, Truth and Deception: The Polygraph ("Lie-detector") Technique (2d ed). (Physiological responses would not, however, be distorted by counsel observing through a one-way window.) But see Furedy & Liss, *Countering confessions induced by the polygraph: Of confessionals and psychological rubber hoses,* 29 Crim L Q 91, 103 (1986) (no scientific basis for assertion that the examiner must be alone with the examinee). During postexamination questioning, however, the rationale for exclusion is inapplicable because physiological responses are no longer being monitored.

[4] The Court of Appeals said, "Defense counsel says the polygraph waiver was ambiguous and that the parties never understood defense counsel was waiving his right to be present at a post-polygraph interrogation." *People v Ray,* n 1 *supra,* p 47.

We would affirm the decision of the Court of Appeals.

CAVANAGH, J., concurred with LEVIN, J.