*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARIUS QUAYSHAUN DUNN,

Defendant-Appellant.

UNPUBLISHED
February 25, 2020

No. 344841
Genesee Circuit Court
LC No. 17-041624-FC

Before: BORRELLO, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of assault with intent to murder (AWIM), MCL 750.83, two counts of discharge of a firearm from a motor vehicle causing injury, MCL 750.234a(1)(b), four counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1), and one count of domestic violence, MCL 750.81a(2). Defendant was sentenced to serve concurrent sentences of 264 to 528 months of imprisonment for AWIM, 24 to 180 months of imprisonment for discharging a firearm, and 69 days in jail for domestic violence, and consecutive sentences of two years of imprisonment for felony-firearm. We affirm.

## I. FACTS

Defendant was in an intimate relationship with Daniell Gray for approximately seven years, until 2014. They both testified that the relationship ended on good terms and that they would see each other occasionally around the neighborhood where their families lived, but otherwise had no contact. In 2017, Gray was in a relationship with Tevin Thomas.

On March 4, 2017, Gray and Thomas were driving in Gray's Chevrolet Impala when a white, full-length SUV pulled toward them into a turn lane and slowed down. Gray recognized the SUV's distinctive blue fog lights and recognized it as defendant's vehicle. Gray and Thomas looked the driver in the face as he passed and saw it was defendant. The driver then fired multiple shots into Gray's vehicle, striking her in the back and lung and Thomas in the shoulder. The fired shell casings recovered from the scene matched a handgun owned by defendant.

-1-

Gray and Thomas recovered from their injuries and Gray told the police that defendant was the shooter. She told police that she knew it was defendant because they "looked each other dead in the face."

Michigan State Police troopers impounded defendant's white SUV, which was missing its fog lights, and defendant voluntarily went with them for an interview. The troopers discovered security camera footage from a convenience store near the shooting that showed a white SUV that matched defendant's vehicle following a Chevrolet Impala and then reversing back up the street. On the basis of the video, the troopers asked defendant in for a second interview. Defendant gave the troopers written consent to search his cell phone. Forensic analysis of the phone revealed photographs of defendant's handgun, receipt of purchase, driver's license, and concealed pistol license. It also revealed that defendant searched "4 Ways to Cheat a Polygraph Test" less than two hours after the initial police interview and that he sent the weblink to three contacts via text message.

Defendant testified that he was home with his girlfriend at the time of the shooting and heard shots fired, but did not contact the police. Defendant further testified that the officers asked him during the first interview if he would submit to a polygraph examination and he refused. He testified that he conducted the internet search after a neighbor told him that polygraphs were unreliable and recommended that he search for "4 Ways to Cheat a Polygraph Test."

The prosecutor filed a motion to admit evidence of defendant's "4 Ways to Cheat a Polygraph" search history as evidence of defendant's consciousness of guilt. The prosecutor also filed a motion to introduce Gray's statements to the troopers under the domestic violence exception to hearsay, MCL 768.27c. Defense counsel objected to both motions, arguing that the search history was irrelevant and prejudicial and that the incident involving Gray did not fall under the definition of "domestic violence" because her relationship with defendant ended more than three years before the incident. The trial court determined that all of the evidence was admissible because the search history was likely relevant and did not constitute an "other act" under MRE 404(b) and there was no temporal limitation on past relationships under MCL 768.27c.

## II. STANDARD OF REVIEW

We review for abuse of discretion a trial court's decision to admit evidence. *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). We review de novo questions of law such as "whether a rule of evidence or statute precludes the admissibility of the evidence." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

## III. ANALYSIS

Defendant first argues that the trial court abused its discretion by allowing evidence of defendant's internet search history to be presented at trial. We disagree.

MRE 404(b) states, in relevant part:

>    (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"MRE 404(b) applies to evidence of crimes, wrongs, or acts other than the conduct at issue in the case that may give rise to a character-to-conduct inference." *People v Jackson*, 498 Mich 246, 275; 869 NW2d 253 (2015) (quotation marks omitted). Uncharged acts inextricably related to the charged offense can be considered under MRE 404(b) for a nonpropensity purpose. *Id.* at 265-266 (quotation marks omitted). Defendant's search of "4 Ways to Cheat a Polygraph Test" was conduct that was not related to the charges, and therefore, it was an "other act" for purposes of MRE 404(b)(1).

Evidence of other acts is admissible under MRE 404(b) if such evidence is (1) offered for a purpose other than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). "Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *People v Mardlin*, 487 Mich 609, 615–16; 790 NW2d 607 (2010). Consciousness of guilt is a proper noncharacter purpose under MRE 404(b). See, e.g., *People v Compeau*, 244 Mich App 595, 598; 625 NW2d 120 (2001) (discussing consciousness of guilt). "A jury may infer consciousness of guilt from evidence of lying or deception." *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008).

Here, defendant's search history was properly admitted for the proper noncharacter purpose of showing defendant's consciousness of guilt.[1] Defendant's search of "4 Ways to Cheat a Polygraph Test" is relevant to demonstrate defendant's consciousness of guilt because it indicates that he planned to answer the questions dishonestly. MRE 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Moreover, the danger of unfair prejudice to defendant by admitting the search history does not outweigh the probative value of the evidence. MRE 403. Admitting the *results* of a polygraph examination would be unfairly prejudicial because its scientific reliability has not been established and the jury could give disproportionate weight to the evidence as conclusive proof of guilt. *People v Ray*, 431 Mich 260,

---

[1] The evidence also would have been admissible under a number of other proper purposes set forth in the nonexhaustive list of exceptions in MRE 404(b)(1) (proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident). *Jackson*, 498 Mich at 259.

265; 430 NW2d 626 (1988).[2] The evidence at issue here, that defendant researched *how to deceive* a polygraph, is not unfairly prejudicial because it does not relate to taking a polygraph and is probative of defendant's interest in deceiving police. Furthermore, the trial court instructed the jury that it was to consider evidence of defendant's search history only as it related to his consciousness of guilt. Because "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors," *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003), any improper speculation or prejudice by the jury was cured. Therefore, the trial court did not abuse its discretion by admitting the evidence of defendant's search history.

Defendant next argues that the trial court abused its discretion by allowing the troopers to testify as to Gray's statements pursuant to MCL 768.27c because the incident does not fall under the category of domestic violence as required by subsection (1)(b). We disagree.

MCL 768.27c(1)(b) allows an otherwise hearsay statement to be admitted into evidence in a domestic violence case if "[t]he action in which the evidence is offered under this section is an offense involving domestic violence." MCL 768.27c(5)(*i*) defines "domestic violence" as an act by a person, not in self-defense "[c]ausing or attempting to cause physical or mental harm to a family or household member." MCL 768.27c(5)(c) (*iv*) in turn defines "family or household member" as:

> [a]n individual with whom the person *has or has had a dating relationship.* As used in this subparagraph, "dating relationship" means frequent, intimate associations primarily characterized by the expectation of affectional involvement. This term does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context. [Emphasis added].

Both Gray and defendant acknowledged that they were involved in an intimate dating relationship for several years. Therefore, MCL 768.27c(5)(c)(*iv*) applies.

Defendant argues that Gray does not qualify as a "family or household member" under the statute because they had not been dating for more than three years at the time of the incident and only had infrequent passing interactions. However, there is no temporal limitation for a prior relationship under MCL 768.27c(5)(c)(*iv*). We "must interpret the statute according to the Legislature's plainly expressed meaning, and we must apply the statute as written." *People v Meissner*, 294 Mich App 438, 446; 812 NW2d 37 (2011). If the Legislature intended the exception to apply only to relationships that were ongoing at the time of the incident, it could have chosen not to include the language about past relationships. Therefore, the trial court did not abuse its discretion by allowing the troopers to testify as to Gray's statements.

## IV. CONCLUSION

The trial court did not abuse its discretion by allowing evidence of defendant's internet

---

[2] Defendant did not take a polygraph exam, and therefore, no results were admitted at trial.

search history to be presented, or by allowing the troopers to testify as to Gray's statements.[3]

Affirmed.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan

---

[3] We note that even if the evidence was inadmissible, any error would be harmless in light of the overwhelming evidence of defendant's guilt. See *Lukity*, 460 Mich at 496 (noting that an evidentiary error is not a basis for reversal unless it affirmatively appears that it is more probable than not that the error was outcome determinative).