*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONTREL JERMAINE WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2019

No. 343761
Kalamazoo Circuit Court
LC No. 2017-000685-FC

Before: GLEICHER, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b; second-degree criminal sexual conduct (CSC-II), MCL 750.520c; kidnapping, MCL 750.349; and kidnapping-child enticement, MCL 750.350. We affirm.

This case arises out of a kidnapping and sexual assault in Kalamazoo, Michigan. In May of 2017, defendant picked up the 13-year-old victim in his car, brought her to his home, and forced her to perform oral sex on him several times.

On appeal, defendant contends that there was insufficient evidence to support his kidnapping or kidnapping-child enticement convictions. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). In reviewing the sufficiency of the evidence, this Court must evaluate the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). All conflicts in the evidence must be resolved in favor of the prosecution, and the court shall not interfere with the jury's determinations about the weight of the evidence or the credibility of the witnesses. *Wolfe*, 440 Mich at 515.

-1-

To convict a defendant for kidnapping-child enticement, the prosecution must prove that the defendant (1) maliciously, forcibly, or fraudulently; (2) lead, took, carried away, decoyed, or enticed away; (3) a child under 14 years old; (4) with the intent to detain or conceal the child from the child's parent. MCL 750.350. "Maliciously" is not defined by the statute, but the dictionary defines "malice" as "[t]he intent, without justification or excuse, to commit a wrongful act" and "[r]eckless disregard of the law or of a person's legal rights." *Black's Law Dictionary* (10th ed); see also *People v Harris*, 495 Mich 120, 136; 845 NW2d 477 (2014) (defining "maliciously" as used in MCL 750.213 by reference to *Black's Law Dictionary*'s definition of "malice").

It is uncontested that the victim was 13 years old and that defendant picked her up in his car and drove her to his house. Thus, the second and third elements of kidnapping-child enticement—the victim was under 14 years of age and defendant carried her away—are clearly satisfied. A detective testified that defendant admitted that he intended to have sexual contact with the victim when he picked her up. From this fact, a rational juror could conclude beyond a reasonable doubt that the first element was satisfied; defendant carried the child away "maliciously," meaning with the intent to commit a wrongful act.

The only remaining question is whether defendant performed this act with the intent to detain or conceal the child from the child's parent. As explained by this Court in *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011):

> Intent may be inferred from all the facts and circumstances. Further, "[a] defendant's intent may be inferred from his acts." Because of the inherent difficulty of proving a defendant's state of mind, only minimal circumstantial evidence from which intent may be inferred need be presented. [Footnotes omitted; alteration in original.]

The record reflects that defendant did not have permission from the victim's parents to take the victim, and that he was in fact a stranger to the victim and her family. The victim testified that defendant pulled over his car near her, called her over to him, and demanded that she get into his car, which the victim did out of fear. Defendant then took the victim to his house, and she went inside with him out of fear.

This evidence and reasonable inferences that arise from this evidence are sufficient for a rational trier of fact to find the requisite intent for kidnapping-child enticement beyond a reasonable doubt. Defendant did not know the victim or her parents, and he demanded that the victim—a 13-year-old child—get into his car. Then, without discussing where he was taking her, defendant took the victim to a place unfamiliar to her yet familiar to him: defendant's home. And defendant admitted that he did so with the intention of having sexual contact with the victim. From this evidence, it can be reasonably inferred that defendant intended to detain or conceal the victim from her parents so that he could sexually assault her. Thus, a rational trier of fact could find beyond a reasonable doubt that defendant carried away the victim with the intent to detain or conceal her from her parents. For these reasons, the prosecution presented sufficient evidence to establish all of the elements of kidnapping-child enticement beyond a reasonable doubt, and this aspect of defendant's sufficiency argument does not warrant relief.

-2-

Turning to the other aspect of defendant's sufficiency argument, he contends that there was insufficient evidence that he restrained the victim, so the prosecution failed to prove that he committed the crime of kidnapping. Defendant was charged with kidnapping under MCL 750.349(1)(c), which required the prosecution to prove that defendant (1) knowingly restrained another person (2) with the intent to engage in criminal sexual penetration or criminal sexual conduct under MCL 750.520a *et seq.* MCL 750.349(2) defines "restrain" as

> to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

There is no dispute that the victim was 13 years old and that defendant intended a sexual interaction with her when he picked her up. Nor is there a dispute that, once at defendant's house, defendant engaged in oral penetration of the victim. The victim testified that before defendant sexually assaulted her, he pulled his car over near her, called her over to him, and demanded that she get into his car. She testified that she complied with defendant's demand out of fear, and that she continued to do what defendant wanted her to do, like going into his house, out of fear. Based on this evidence, a rational trier of fact could find beyond a reasonable doubt that when defendant demanded the victim get into his car, he did so with the intent to engage in criminal sexual contact under MCL 750.520c(1)(b)(*iii*),[1] and once at his house, he intended for the victim to remain there with the intent to engage in criminal sexual penetration under MCL 750.520b(1)(b)(*iii*).[2]

The only remaining element—and the focus of defendant's appeal—is that the evidence was insufficient to support that defendant restrained the victim. Defendant contends that the victim "willingly" got into his car. But the facts, when viewed in the light most favorable to the prosecution, do not support this contention. The victim testified that defendant demanded that she get into his car, and she complied with defendant's demand out of fear. While defendant did not use force to make the victim enter his car, the kidnapping statute—MCL 750.349—does not require the prosecution to prove that defendant used force to restrain the victim. Compare MCL 750.349(2) (defining the "restrain" element for kidnapping as "to restrict a person's movements or to confine the person") with MCL 750.349a(2) (defining the "restrain" element for unlawful imprisonment as "to *forcibly* restrict a person's movements or to *forcibly* confine the person") (emphasis added). MCL 750.349 only requires that a defendant knowingly restrict a person's

---

[1] MCL 750.520c(1)(b)(*iii*) provides that a person is guilty of CSC II "if he or she engages in sexual contact with another person," "[t]hat person is at least 13 but less than 16 years of age," and "[t]he actor is in a position of authority over the victim and used this authority to coerce the victim to submit."

[2] MCL 750.520b(1)(b)(*iii*) provides that a person is guilty of CSC I "if he or she engages in sexual penetration with another person," "[t]hat person is at least 13 but less than 16 years of age," and "[t]he actor is in a position of authority over the victim and used this authority to coerce the victim to submit."

movement so as to interfere with that person's liberty without that person's consent or without legal authority.

When viewed in the light most favorable to the prosecution, it can be reasonably inferred that defendant knew he was restricting the victim's movements when he ordered her to get into his car. And based on the victim's testimony that she, in her words, "obeyed" defendant out of fear, a rational trier of fact could reasonably infer that defendant's demand did, in fact, restrain the victim's movement without her consent and without legal authority. Thus, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that when defendant demanded that the victim get into his car, he knowingly restricted the victim's movement so as to interfere with her liberty without consent or legal authority. And, as already explained, defendant made this demand with the intent to engage in criminal sexual contact under MCL 750.520c(1)(b)(*iii*). Thus, the prosecution presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant committed the crime of kidnapping under MCL 750.349(1)(c).

Similarly, once at defendant's home, the evidence supports that defendant knowingly restrained the victim with the intent to engage in criminal sexual penetration in violation of MCL 750.349(1)(c). At his home, defendant ordered the victim to sit between his legs, grabbed her head, and forced her to perform oral sex. He then walked the victim up to his bedroom, straddled her chest while she lay down on her back, and put his penis inside her mouth while holding her head. The victim testified that when defendant did this, she was unable to move her body because defendant's legs had her in a "tight lock." This evidence amply supports that defendant restrained the victim's movement without her consent and without legal authority to do so, and with the intent to commit criminal sexual penetration. Thus, from this evidence too, a rational trier of fact could find beyond a reasonable doubt that defendant committed the crime of kidnapping under MCL 750.349(1)(c).[3]

Next, we consider defendant's Standard 4[4] brief. In that brief, defendant first argues that his behavior during the interview in which he confessed demonstrated that he was incompetent, and the trial court should have held a *Walker*[5] hearing to determine whether the confession was voluntary. We disagree.

Defendant did not preserve this argument for appeal, so our review is for plain error affecting substantial rights. *People v Cain*, 238 Mich App 95, 116; 605 NW2d 28 (1999). To warrant relief under this standard, defendant must show that: (1) an error occurred; (2) the error

---

[3] Defendant's challenge to his CSC-I and CSC-II convictions is premised solely on whether there was sufficient evidence to support his kidnapping and kidnapping-child enticement convictions. Because there was sufficient evidence to support those convictions, defendant's challenge to his CSC-I and CSC-II convictions necessarily fails.

[4] Michigan Supreme Court Administrative Order 2004–6, Standard 4.

[5] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

was plain, i.e., clear and obvious; and (3) the plain error affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

At trial, defendant did not challenge the voluntariness of his confession, and Michigan generally does not require a trial court to sua sponte conduct a *Walker* hearing to assess the voluntariness of a defendant's statement before admitting it into evidence. *People v Ray*, 431 Mich 260, 269; 430 NW2d 626 (1988). There is, however, an exception to this general rule; if a case presents "certain alerting circumstances," then the trial court must "raise the issue of voluntariness on its own." *Id*. at 271. "Alerting circumstances may be a defendant's mental, emotional or physical condition, evidence of police threats, or other obvious forms of physical and mental duress." *Id*. at 269 (quotation marks and citation omitted). This rule is limited only "to those cases in which the evidence clearly and substantially reflects a question about the voluntary nature of a confession or implicates other due process concerns." *Id*. at 271.

Based on our review of the record, we cannot conclude that the trial court erred by not sua sponte conducting a *Walker* hearing. Defendant argues that his behavior during his police interview in which he confessed was "erratic" and should have raised questions about the voluntariness of his confession. The detectives that interviewed defendant said that he drank a lot of water, fidgeted, and repeated questions asked of him. This behavior does not "clearly and substantially" bring into question the voluntariness of defendant's confession, so the trial court was not required to raise the issue of voluntariness on its own. *Id*.

Defendant next argues that he should have been afforded an "independent" competency examination, and that his counsel was ineffective for failing to request one.

A defendant is presumed to be competent and will only be determined to be incompetent if it is found that, because of his or her mental condition, he or she is incapable of understanding the nature and object of the proceedings against him or her, or of assisting in his or her defense in a rational manner. MCL 330.2020(1).

Defendant here was afforded a competency evaluation, and at a competency hearing, he was deemed competent. Defendant did not object to this finding. Defendant's argument on appeal is that he should have been afforded *another* competency examination. Defendant appears to contend that his first examination was tainted because it was "state funded," and defense counsel should have recognized this and requested an "independent" competency examination.

Yet defendant does not provide any evidence that the first examination was in any way tainted. The forensic examiner prepared a comprehensive 14-page report in which she looked at various aspects of defendant's mental health and mental health history, and ultimately deemed defendant competent to stand trial. Defendant points to no aspect of the report—save its conclusion—that, according to him, brings the report into question.

Defendant's essential argument is that, based on his history of mental illness, he should have been deemed incompetent to stand trial. This argument is unconvincing, however, because it is well established that a history of mental illness, by itself, does not mandate a competency evaluation in the first instance, let alone require a finding of incompetence to stand trial. See

*People v Johnson*, 58 Mich App 473, 478; 228 NW2d 429 (1975). Thus, defendant has failed to establish that he should have been given a second competency evaluation, and, therefore, defense counsel cannot be deemed ineffective for not requesting one. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (recognizing that defense counsel does not have an obligation to make a meritless objection).

For defendant's last argument in his Standard 4 brief, he appears to contend that the trial court erred by not allowing defendant to "fire his counsel" because defense counsel "wrote [defendant] off as 'crazy,' would not listen to him or address any of his concerns," and "admitted personal bias in stating that defendants with 'his type of crime deserved the worse possible punishment.' " We disagree.

We review for an abuse of discretion a trial court's decision affecting a defendant's right to counsel of choice. *People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

A right to substitute counsel requires a showing of good cause. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). Good cause might include a genuine disagreement with trial counsel over the use of a substantial defense or a fundamental trial tactic, but does not include a mere allegation that he lacked confidence in his lawyer. *People v Traylor*, 245 Mich App 460, 462-463; 628 NW2d 120 (2001).

Defendant's right to retain counsel of his choice must be balanced against the court's and the public's right for prompt and efficient administration of justice. *People v Akins*, 259 Mich App 545, 557; 675 NW2d 863 (2003). "[A] criminal defendant does not have an unbridled right to insist that trial be held in abeyance while he replaces one competent attorney with another." *United States v Bragan*, 499 F2d 1376, 1379 (CA 4, 1974) (quotation marks and citation omitted). The court must consider whether defendant is asserting his constitutional right to counsel, whether defendant cites a legitimate reason such as an irreconcilable and bona fide dispute with counsel, whether defendant's timing reveals his negligence in raising the motion, and whether defendant is seeking adjournment to delay trial such as when defendant has sought previous adjournments. *Echavarria*, 233 Mich App at 369.

Defendant here was originally appointed counsel, but in a letter to the trial court, asked to replace his appointed counsel because he did not believe that she was good for him. Defendant subsequently retained his own counsel. In a letter sent four days before trial,[6] defendant relayed to the trial court that there had been a breakdown in the attorney-client relationship, and he alleged that his retained counsel was a liar, that he threatened to assault defendant, and that he routinely spoke inappropriately towards defendant. Before trial began, defendant reiterated his

---

[6] Trial began on February 28, 2018, and the letter was dated February 24, 2018. A stamp from the prosecutor's office shows that the letter was received on the day of trial—February 28, 2018—and a note from the lower court shows that the court received the letter on March 1, 2018.

concerns about his retained counsel on the record, and told the court that he would need appointed counsel until his family was able to save enough money to afford a different retained counsel. When the trial court allowed defendant's counsel to respond to defendant's allegations, he denied everything that defendant alleged, and told the court that he was prepared for trial and would represent defendant to the best of his ability. The trial court ultimately rejected defendant's request to replace his retained counsel. The trial court reasoned that defendant's retained counsel had a reputation as a good attorney with "a lot of experience in very serious cases," and that defendant's request was nothing more than an attempt "to indefinitely delay the matter" from proceeding to trial.

We initially note that defendant never told the trial court that his retained counsel called him "crazy," nor that his counsel said that defendant's "type of crime deserved the worse possible punishment." Thus, there is no support in the record that defendant's counsel said any of those things, and those allegations were not in front of the trial court when it made its ruling. Turning to the trial court's opinion itself, we hold that the trial court did not abuse its discretion by denying defendant's request. Defendant's reasons for wanting new counsel appeared based on a personal dislike for defense counsel and were wholly unrelated to counsel's representation of defendant. Moreover, defendant's timing of his request—four days before trial—shows negligence in raising the motion. Lastly, as found by the trial court, defendant's late request combined with his previous request to replace his first attorney suggests that defendant's intention in asking for new counsel was to delay his trial. Thus, the trial court's refusal to allow defendant to replace his retained counsel on the day of trial was not outside the range of reasonable and principled outcomes.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien